IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN OF TEXAS
HOUSTON DIVISION

United States District Court
Southern District of Texas
FILED
NOV 2 0 2009

Clerk of Court

| | | |
|---|---|---|
| JOHN A. RIGAS & CARRIE J. RIGAS | § § § | |
| Plaintiffs | § § | 09-3770 |
| V. | § § | Civil Action No. _____ |
| UNITED STATES OF AMERICA, | § § | |
| Defendant. | § § § | |

## COMPLAINT

Plaintiffs JOHN A. RIGAS & CARRIE J. RIGAS ("Taxpayers" or "Plaintiffs") file this Original Complaint for a refund of overpaid federal income taxes and interest that Defendant United States of America, acting through the Commissioner of the Internal Revenue Service (the "Commissioner") has improperly refused to refund to Taxpayers, and would respectfully show the Court as follows:

### JURISDICTION AND VENUE

1. This is an action for the recovery of federal income taxes overpaid by Taxpayers, which the Commissioner has wrongfully refused to refund to Taxpayers. The court has jurisdiction over the lawsuit under 28 U.S.C. §1346(a)(1).

   a. On April 5, 2005, Taxpayers timely filed their Form 1040 for the 2004 tax year and timely paid the federal income taxes reported on that return. The information reported by Taxpayers on such Form 1040 and the resulting taxes paid therewith stemmed in part from income items reported to Taxpayer John A. Rigas on Forms K-1 from Odyssey Energy Capital I, LP

("Odyssey LP") and Odyssey Energy Capital, LLC ("Odyssey LLC"). Odyssey LLC is the general partner of Odyssey LP. Odyssey LP and Odyssey LLC will be jointly referred to herein as the Odyssey Partnerships.

    b. After subsequently receiving amended Schedules K-1 from the Odyssey Partnerships, which had filed Amended Forms 1065, as detailed below, consistent with those amended Forms and Schedules Taxpayers filed with the Commissioner Forms 1040X, amended Schedules K-1, and related Forms 8082 claiming capital gains treatment on certain items of income that had previously been reported as ordinary income.

    c. The Commissioner issued a Notice of Disallowance to Taxpayers dated November 26, 2007, providing that Taxpayers had until November 26, 2009, to file a lawsuit in District Court to contest the disallowance.

    d. On October 29, 2009, Commissioner sent to Taxpayer's legal counsel a substantive analysis of Taxpayers' claim, concluding that the Taxpayers' claim was without merit and should not be granted.

    e. This Complaint is being filed more than six months after Taxpayers originally filed refund claims and after the Commissioner has issued one Notice of Disallowance with respect to these issues, providing that Taxpayers had until November 26, 2009, in which to file suit in District Court to recover these taxes. Thus, jurisdiction is proper under 28 U.S.C. §1346(a)(1), 26 U.S.C. §7422, and 26 U.S.C. §6228(b) because Taxpayers (i) made full payment of the taxes as required; (ii) timely filed refund claims/administrative adjustment requests; and (iii) timely filed this Complaint after 6 months and also after the issuance of the Notice of Disallowance.

2.     Venue is proper in the Southern District of Texas under 28 U.S.C. §1402 because Taxpayers reside within this district.

## THE PARTIES

3.     Plaintiffs, John A. Rigas (Social Security Number XXX-XX-7084) and Carrie J. Rigas (Social Security Number XXX-XX-6515), are individuals residing in Harris County, Texas.

4.     Defendant is the United States of America, acting through the Commissioner. Service of process may be made on Defendant by registered mail, return receipt requested, to the following:

    a.    Eric H. Holder
Attorney General for the United States
Department of Justice
Room 4400
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530-0001

    b.    Tim Johnson
Acting United States Attorney
Attention: Civil Process Clerk
919 Milam St., Suite 1500
Houston, Texas 77002

    c.    Department of the Treasury
Internal Revenue Service
Attention: Notices Clerk
1100 Commerce Street, MC 4019 DAL
Dallas, Texas 75242-1198

## FACTUAL BACKGROUND

## COUNT 1 – CAPITAL GAIN INCOME

5.     Taxpayers hereby incorporate the contents from paragraphs 1-4 above.

6.     Odyssey LP was formed on March 7, 2003, for the purpose of entering into an arrangement with Hydrocarbon Capital LLC ("Hydrocarbon"), pursuant to which Odyssey LP

{00846549.DOC / 2}

would manage a portfolio of oil and gas capital assets (notes, overriding royalty interests, and warrants for equity, collectively the "Instruments") that had been held by Hydrocarbon.

7. Odyssey LLC was formed on the same date, as the general partner of Odyssey LP.

8. Hydrocarbon recognized that the partners of Odyssey LP had substantial expertise related to the management of the Instruments, including a recent history of origination, management, and relationships with respect to those assets while the partners of Odyssey LP had been associated with Mirant Americas Energy Capital ("Mirant"), from whom Hydrocarbon had acquired the Instruments.

9. On March 13, 2003, Odyssey LP executed a Loan Management and Servicing Agreement (the "Agreement") with Hydrocarbon, pursuant to which Odyssey LP would manage the Instruments and Odyssey LP would receive 20% of the net profits (net of all expenses) realized from the Instruments, after Hydrocarbon recovered its initial equity investment and a 10% preferred return.

10. The original equity investment that Hydrocarbon had to recover, in addition to the 10% preferred return, before the net profits sharing began was $164 million. The Investments were subject to a litany of oil and gas related risks – including but not limited to commodity price risk, drilling risk, operational risk, counter-party risk, illiquidity given private equity investments, etc., rendering Odyssey LP's profits interest impossible to value and quite possibly without value at that time.

11. The substance of the arrangement involving Hydrocarbon and Odyssey LP was distinctly that of a partnership or a joint venture, pursuant to which Hydrocarbon provided the equity, Odyssey LP provided the expertise and services, and the two parties split the net profits of the enterprise.

12. Odyssey LP's duties included providing the servicing, management, administration and disposition services for the Instruments; and providing advisory, consultation and management services with respect to the disposition of Instruments, all set forth in great detail in the Agreement.

13. Prior to sharing in the net profits, Odyssey LP also had to recover amounts covering its overhead, extended pursuant to an overhead note.

14. Odyssey LP additionally received a quarterly Management Fee, subject to payments of the overhead note.

15. Odyssey LP's profits interest was clearly 100% at risk at all times and was subject to a callback provision, in the event that capital requirements or the net profits split between Hydrocarbon and Odyssey LP so required. This callback provision was exercised by Hydrocarbon at one point during the sharing of the net profits interest, when in 2005 unforeseen expenses required a capital call, which Odyssey LP answered with a re-contribution of funds. Whatever labels were used at different points in time, the substance of the arrangement involving Hydrocarbon and Odyssey LP was that of a partnership or joint venture.

16. Odyssey LP's profits interest was structured with a waterfall calculation that is typical of private equity industry arrangements for carried interests or profits interests.

17. The language in the Agreement disclaiming a partnership arrangement was included in the Agreement by certain Hydrocarbon members, for state law reasons unrelated to tax issues, but did not reflect the substantive agreement of the parties, which is in substance a partnership or joint venture resulting in the split of net profits, and the parties involved will attest that the substance of the arrangement was intended to operate as a standard profits interest or carried interest pursuant to industry standards.

18. Hydrocarbon and Odyssey LP plainly joined together in a business enterprise that would generate net profits that would be split by the parties as partners or joint venturers.

19. Odyssey LP was subject to an exclusivity arrangement, pursuant to which Odyssey LP was forbidden to conduct any other business than the management of the Instruments prior to the recovery of Hydrocarbon's initial equity investment.

20. Pursuant to loan repayments of certain Instruments and sales of certain Instruments throughout 2003 and 2004, Hydrocarbon had received a full return plus the 10 preferred return of its original equity investment on April 1, 2004.

21. Amounts received during 2004, after that date, from further remaining sales of the Interests resulted in payments to Odyssey LP, based on its interest in the net profits of the enterprise due to its profits interest therein.

22. Under Revenue Procedure 93-27 and significant case law authority, Odyssey LP's profits interest received for services did not result in a taxable event at the time of the granting of the profits interest in 2003, because Odyssey LP had no capital interest and Odyssey LP's profits interest was, at that point, impossible to value and quite possibly valueless. *E.g., Campbell v. Comm'r*, 943 F.2d 815 (8th Cir. 1991).

23. As Odyssey LP had a profits interest this business arrangement and was thus a partner or joint venturer (within the tax meaning of the term, without regard to the labels used under state law), the capital gain income generated for the Odyssey Partnerships through these realization events with respect to the Investments is properly characterized as capital gain income to the Odyssey Partnerships and to the partners of the Odyssey Partnerships. Internal Revenue Code §702(b) ; Treas. Reg. §1.702-1(b).

24. Taxpayers are thus due a refund of federal income taxes in the amount of $857,682 for the 2004 tax year, together with pre- and post-judgment interest as provided by law.

25. The Odyssey Partnerships originally reported such amounts as ordinary income, and the partners of the Odyssey Partnerships followed suit based upon the Schedules K-1 that they received from the Odyssey Partnerships.

26. Upon subsequent seeking of professional tax advice, the Odyssey Partnerships realized the error in reporting such amounts as ordinary income and sought to correct such error by properly reporting the receipt of such amounts as capital gain income, as discussed in detail above.

27. Taxpayer had previously ceased to be a partner in the Odyssey Partnerships on September 21, 2006.

28. The other partners of the Odyssey Partnerships filed refund claims based on the Amended Forms 1065 and related Schedules K-1 issued by the Odyssey Partnerships. The Commissioner responded to all of the refund claims made by all of other partners of the Odyssey Partnerships by paying such refunds in full, with interest.

29. The Commissioner's disallowance of Taxpayers' claim, combined with the Commissioner's failure to audit the Odyssey Partnerships and the Commissioner's decision to pay refunds to all of the other partners of the Odyssey partnerships, violates the Internal Revenue Code's requirements of consistent treatment among partners in such scenarios and that all such determinations should be made at the partnership level. 26 U.S.C. §6221. As such the Commissioner should be required to allow Taxpayers' claim for refund just as the Commissioner properly allowed all of the identical refund claims for all of the other partners of the Odyssey Partnerships.

WHEREFORE, Plaintiffs respectfully pray that this Court enter judgment:

a) declaring that Plaintiffs are entitled to a refund for all federal income taxes overpaid by Plaintiffs with respect to the 2004 tax year;

b) ordering Defendant to refund such overpayment totaling $857,682, plus pre- and post-judgment interest as provided by law;

d) ordering that Plaintiffs be awarded reasonable and necessary attorneys fees and litigation costs; and

e) granting Plaintiffs such other and further relief to which they are entitled.

Respectfully submitted,

BY: _____
Marcus J. Brooks
State Bar No. 24040579
Greg White
State Bar No. 21329050

NAMAN, HOWELL, SMITH & LEE, PLLC
400 AUSTIN AVENUE
P. O. BOX 1470
WACO TX 76703-1470
(254) 755-4100

ATTORNEYS FOR PLAINTIFFS
JOHN A. RIGAS & CARRIE J. RIGAS